J-S62010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD ROY MINNER | : | |
| | : | |
| Appellant | : | No. 1699 WDA 2018 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-CR-0000251-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD ROY MINNER | : | |
| | : | |
| Appellant | : | No. 224 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-CR-0000251-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EDWARD ROY MINNER | : | |
| | : | |
| Appellant | : | No. 225 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s): CP-33-CR-0000251-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

|  |  |  |
|---|---|---|
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| EDWARD ROY MINNER | : |  |
|  | : |  |
| Appellant | : | No. 226 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| EDWARD ROY MINNER | : |  |
|  | : |  |
| Appellant | : | No. 227 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| EDWARD ROY MINNER | : |  |
|  | : |  |
| Appellant | : | No. 228 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |

EDWARD ROY MINNER                    :
                                     :
            Appellant                :       No. 229 WDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
EDWARD ROY MINNER               :
                                :
            Appellant           :       No. 230 WDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
EDWARD ROY MINNER               :
                                :
            Appellant           :       No. 231 WDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                                :
            v.                  :
                                :
                                :
                                :
EDWARD ROY MINNER               :
                                :
            Appellant           :       No. 232 WDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD ROY MINNER | : | |
| | : | |
| Appellant | : | No. 233 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD ROY MINNER | : | |
| | : | |
| Appellant | : | No. 234 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD ROY MINNER | : | |
| | : | |
| Appellant | : | No. 235 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County

Criminal Division at No(s):  CP-33-CR-0000251-2018

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
EDWARD ROY MINNER :
:
Appellant : No. 236 WDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
EDWARD ROY MINNER :
:
Appellant : No. 237 WDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
EDWARD ROY MINNER :
:
Appellant : No. 238 WDA 2019

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF

|   |   |   |   |
|---|---|---|---|
|   | : | PENNSYLVANIA | |
|   | : | | |
| v. | : | | |
|   | : | | |
|   | : | | |
|   | : | | |
| EDWARD ROY MINNER | : | | |
|   | : | | |
| Appellant | : | No. 239 WDA 2019 | |

Appeal from the Judgment of Sentence Entered October 18, 2018
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000251-2018

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:              **FILED FEBRUARY 11, 2020**

Edward Roy Minner appeals from the October 18, 2018 judgment of sentence entered in the Court of Common Pleas of Jefferson County, which followed his nonjury conviction of person not to possess firearms[1] and his jury conviction of thirteen counts of delivery of a controlled substance, one count of conspiracy, and one count of recklessly endangering another person.[2] After thorough review, we affirm.

The criminal charges against Minner stem from the finding of a female body at a condemned residence in Jefferson County, Pennsylvania. A subsequent law enforcement investigation led to the uncovering of witnesses that were present with the deceased prior to her death. Those witnesses indicated that Minner had been dealing drugs and consequently gave the

---

[1] **See** 18 Pa.C.S.A. § 6105(a)(1).

[2] **See** 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 901(a)(1); 18 Pa.C.S.A. § 2705, respectively.

deceased the dose of heroin that ultimately killed her. Furthermore, the witnesses stated that Minner sold them methamphetamine. During the investigation, law enforcement personnel discovered a firearm that Minner owned.

Based on the witnesses' statements and physical evidence, Minner was arrested, his mobile phone was seized, and information on his mobile phone was extracted.

Prior to trial, Minner's firearm charge was severed from the other charges. Some two weeks before trial, the court denied Minner's request for a continuance, granted Minner's request for funds to hire an expert, and granted the Commonwealth's request to file an information against Minner without a preliminary hearing and consolidate it into this case.

Minner was found guilty of all of the counts that he faced at both the jury and nonjury trials and was sentenced to an aggregate term of incarceration of thirty to sixty years. Having been found guilty of sixteen different counts, Minner's sentence consisted of sixteen separate orders at sixteen different case numbers.

After sentencing, Minner filed timely post-sentence motions, which were denied. Minner then filed a timely notice of appeal, but only appealed one of the sixteen sentencing orders. This error was corrected when the court granted Minner's motion for leave to file notices of appeal *nunc pro tunc*. Thereafter, we consolidated Minner's appeals *sua sponte*. Both Minner and the trial court have complied with the dictates of Pa.R.A.P. 1925.

In this appeal, Minner raises three issues for our review:

1) Did the lower court err when it denied Minner's request for a continuance to secure an expert witness?

2) Did the lower court err in granting the Commonwealth's request to amend the Information, as it added nine charges nine days prior to trial?

3) Did the lower court err in denying Minner's request for a continuance where the continuance request was based on the amended Information?

*See* Appellant's Brief, at 4.

Minner's first contention is that the court should have granted him a continuance when it granted his request to secure an expert witness for trial. Minner notes that he had only thirteen days to do so prior to trial. *See id*., at 13. Accordingly, Minner asserts that the court erroneously focused on expeditiousness in getting him to trial even though he had presented a justifiable request for a delay. *See id*., at 13-14.

The matter of granting or denying a continuance is within the discretion of the trial court. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Nevertheless, a trial court's discretion is not unlimited. "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Id*.

However, "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S.

1, 11 (1983). "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." *Id*.

The United States Supreme Court has emphasized that there are no mechanical tests in determining whether the denial of a continuance was arbitrary and therefore violative of due process. *See Ungar*, 376 U.S. at 589.

Conversely, "a trial court exceeds its constitutional authority only when it exercises its discretion to deny a continuance on the basis of an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Commonwealth v. Sandusky*, 77 A.3d 663, 671-72 (Pa. Super. 2013) (citation and quotation marks omitted). "To determine whether a constitutional violation occurred, we must examine the circumstances present in the case, especially the reasons presented to the trial court for requesting the continuance." *Id*., at 672.

Here, Minner was initially charged with several drug-related offenses, which generated a case management sheet. That sheet enumerated several important dates such as the first day of jury selection for Minner's trial. Thereafter, the Commonwealth filed a new case with additional charges against Minner. Minner waived his arraignment for these new charges.

Ultimately, the second series of charges was then attached to the scheduling order of the initial charges, consolidating them all to be tried on

the same date. As a result, the consolidated trial occurred approximately three weeks prior to the initial scheduling date for formal arrangement on the second set of charges.

In a pretrial motion, Minner requested funding for an expert to opine on the effect methamphetamine use had on several of the witnesses' mental capacities. The court granted the request for funding, but denied the request for a continuance. This motion was decided orally on August 3, thirteen days prior to trial, and the funding of an expert was formally granted in writing on August 7. The court explained its denial of the continuance as follows:

> Even though this preliminary hearing was only held in May and while the charges had been in the court for over a year that were *nolle prossed* and subsumed by this, so my intention is to deny the motion for a continuance[.]
>
> …
>
> I mean, really, the entire thing has gone on for over a year, and unfortunately, Mr. Minner has been in jail for over a year.
>
> So I think he needs to go to trial. We're certainly aware generally of the facts. As we get into more specifics now as everybody is prepping for trial, especially with regard to the phone records and the other things, the re-interviews, so my intention is to deny the continuance and to grant the expert.

Omnibus Pretrial Motion Hearing, 8/3/18, at 2, 47-48.

Minner renewed his motion for a continuance just prior to the commencement of trial.

> I want to put on the record since the motions had been filed requesting funding for an expert and the [c]ourt had indicated go ahead and get an expert, we've made countless efforts to reach out to neurologists, psychologists, addiction specialists, anybody

who could testify as the motion has indicated.

…

Two of the witnesses will indicate - - one will indicate that she had been using methamphetamine and had been awake for the previous six days to the events.

Another witness will testify - - has testified that he had been using for two to three days methamphetamine and had been awake. There was some discovery that was provided where he indicates he had also been using and awake for six days prior to the events.

N.T., 8/16/18, at 6-7. The court dismissed Minner's request for a continuance based on the asserted necessity of an expert's testimony:

But unless there's somebody who uses methamphetamine on the [j]ury, I don't think a normal human being could be up for six days, so nobody is going to be able to relate to the experience. So I am going to deny the motion to continue.

***Id***., at 9.

In his brief, Minner emphasizes that the requested expert's purpose "was to explain to the jurors the effects of the drug and the lack of sleep on the ability to perceive and remember, not simply to explain what it's like to use meth." Appellant's Brief, at 14. Stated differently, Minner wanted to demonstrate to the jury that "the continual use of methamphetamine and lack of sleep for … extended periods of time have a significant impact on the condition of the witnesses' testimony." Omnibus Pretrial Motion, 7/25/18, at 3.

For argument's sake, we will assume Minner intended to utilize an expert in the way he has presented and that such a use would have been permissible

under the Pennsylvania Rules of Evidence.[3] We will also take note of the rigidly small turnaround time that the trial court gave to Minner in order to find an expert, which, at a minimum, contradicted the spirit of the court's expert funding. However, even if we were to find that the trial court did commit an error in denying Minner's continuance requests, we find that error to be harmless. ***See Sandusky***, 77 A.3d at 672 (finding that a court's erroneous denial of a continuance request is subject to a harmless error analysis).

A harmless error inquiry requires us to ascertain whether Minner has suffered from prejudice. ***See id***., at 673. The Commonwealth indicates that it "spent its entire closing argument explaining to the jury that it was not expecting the jury to believe those witnesses because they were inherently credible[.]" Appellee's Brief, at 4. Instead, it was merely reinforcing the information extracted from Minner's cell phone, which it had already placed into the record:

> I want to talk about the concept of corroboration … and that word deals with bolstering people's testimony. See, we're not coming in here today and asking you simply to buy the word of the witnesses. We're not doing that. We spent a lot of time yesterday, and I know it got laborious at times putting all that paper into evidence, going through all those text conversations, Facebook conversations; but those, boy, those spoke a lot. See, I often say

_____

[3] It is not clear, under present law, that Minner's proposed expert testimony would have been admissible. ***See***, ***e.g.***, ***Commonwealth v. Walker***, 92 A.3d 766, 781 (Pa. 2014) (recounting long-held prohibition on expert testimony that intrudes upon the jury's traditional function of assessing witness credibility). However, we need not reach this issue, as Minner has failed to establish that he suffered any prejudice from the denial of his request for a continuance.

to people that if you give me a few minutes with your phone or if you give me a few minutes with your checkbook, I'm going to be able to say who you are. … It tells you so much about them, and we've got a window into Mr. Minner through various messaging that we talked about.

…

Now, there has been some statements made about our witnesses being drug users, being up for days on crystal meth. Certainly true. But I would like to point this out. It's a bit of a cliché, but I'll tell you right now, we didn't pick our witnesses. Ed Minner picked our witnesses. Those were the people he was hanging out with. Those were the people who were in the market for his substances. … That's where the information's going to come from. And I'm not – I'm not going to talk much longer about it because you're familiar with it. When our witnesses told you he wanted out there, when she went unresponsive, he started trying to get a ride, you heard the text messages. He was frantically trying to get a ride. … You heard all the technological evidence from that phone, the texting, the Facebook. It corroborated our witnesses. I mean, you can complain or you can ask them all day long how may days they had been up, how much drugs they had been doing, what they had been doing, but let me tell you what, all of the technological evidence backed up their accounts. It fit like a glove. The timeline, everything, it fit perfect. … [L]adies and gentlemen, you don't have to stand just on your observations of them and their demeanor and what they can remember and what they couldn't. You don't because all of their accounts were corroborated. You don't just have to take their word, and because of that, I would submit that you should their word because they were bolstered in so many ways.

N.T., Jury Trial, 8/17/18, at 235-236, 254-255.

Through our independent review of the record, we conclude that the Commonwealth's case was built primarily through Minner's texts and Facebook messages. We also conclude that the relevant eyewitness testimonies were largely, if not entirely, duplicitous of the information acquired from Minner's cell phone.

In turning to his brief, Minner has not identified any pieces of the eyewitnesses's testimonies that were wholly independent of the cell phone evidence. Further, Minner does not challenge anything unearthed from his cell phone. Therefore, even if an expert would have served to controvert every aspect of the witnesses's testimonies, the fact remains that Minner has not identified any salient testimony that was not corroborated by the electronic evidence. Consequently, we find no basis to conclude that Minner has suffered any prejudice from not having had an expert at trial. In the absence of prejudice, his first continuance-based claim fails.

In Minner's second issue, he suggests it was error for the trial court to grant the Commonwealth's request to amend the information against him, which added nine charges nine days prior to trial. Preliminarily, we note that the Commonwealth sought amendment pursuant to both Pa.R.Crim.P. 565(A), which provides the Commonwealth an opportunity to file an information without a preliminary hearing, and 582(B)(2), which creates a procedure for joinder of separate informations. *See* Motion for Leave to File an Information without a Preliminary Hearing and for Joinder [of] Informations, filed 8/2/18.

Nevertheless, the trial court granted the Commonwealth's Motion, but did so under Pa.R.Crim.P. 564. *See* Opinion on Pretrial Motions, 8/7/19, at 3. Minner argues that the trial court was wrong to address the Commonwealth's request under Pa.R.Crim.P. 564 and not Rules 565 and 582. *See* Appellant's Brief, at 16-17. However, we agree with the Commonwealth that "[t]he effect

of either scenario [, i.e., amendment versus a new information filing and subsequent joinder] is identical[.]" Appellee's Brief, at 10. Accordingly, we will treat the new Information against Minner as an amendment.

"The purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202 (Pa. Super. 2011) (citation omitted). When evaluating a challenge to an amended information, we employ the following analysis:

> Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

***Commonwealth v. Jackson***, 215 A.3d 972, 979 (Pa. Super. 2019) (citation omitted). "Relief is warranted only when the amendment to the information prejudices a defendant." ***Id***.

> Factors to be considered when determining whether Appellant was prejudiced by the Commonwealth's amendment include whether the amendment changes the factual scenario; whether new facts, previously unknown to appellant, were added; whether the description of the charges changed; whether the amendment necessitated a change in defense strategy; and whether the timing of the request for the amendment allowed for ample notice and preparation by appellant.

- 15 -

*Id*.

Minner attempts to demonstrate prejudice in several ways. First, he indicates that he was forced to face an entirely different charge, conspiracy, than he had considered to that point. *See* Appellant's Brief, at 17-18. Minner asserts that the new conspiracy charge "added elements not previously considered[.]" *Id*. at 18. Second, Minner avers that he faced prejudice through new drug-related charges featuring "the addition of deliveries to individuals not previously identified as targets of delivery." *Id*.

In response, the trial court found that

the subject amendment added charges of the same nature and committed within the same timeframe as those which [Minner] was already taking to trial, and the information upon which it was founded came directly from [Minner's] cell phone and was confirmed by the same witnesses already identified in police reports—witnesses who had been less than truthful when initially interviewed but who were forced to be honest when confronted with the messages discovered on [Minner's] phone. As the other party to each of the relevant communications, and fully aware that the witnesses, who were his former clients, lied during their interviews, therefore, [Minner] can hardly claim surprise.

Trial Court Opinion, 1/17/19, at 2-3. The trial court continued:

It bears repeating, too, that none of the witnesses [the Commonwealth intended to utilize for these new charges] was unknown to [Minner]; all were the subjects of police interviews disclosed to him more than a year earlier. Certainly their stories changed between May 2017 and July/August 2018, and [Minner] may not have expected that development. Knowing that the Commonwealth was in possession of his cell phone and that a careful search would uncover the truth, however, he certainly could have anticipated it.

*Id*., at 3.

We agree with the trial court's conclusion that the amendment involved the same general set of facts and timeframe as those included in the prior information. We further agree that Minner was, or at a minimum should have been, well apprised of the witnesses and evidence that would be utilized against him, and he should have anticipated that new, similarly situated charges would follow. While the conspiracy charge may have added new elements for Minner to attack at trial, the factual underpinnings of the charged crimes are all derived from a largely overlapping series of circumstances.

Clearly, the originally charged offenses dealt with drug-related activity that was not wholly distinct from the charges he faced after the amendment. Moreover, Minner knew his own cell phone's contents, which led to further evidence of his criminal activity, and he cannot now feign surprise at the uncovering of the information it contained. Therefore, as there has been no deviation from the pre-amendment Information's factual scenario, Minner has not suffered prejudice from the Commonwealth's amendment and is due no relief.

In his third issue, Minner believes that the trial court should have granted a continuance when he asked for one during his hearing for the additional charges. Minner contends that the trial court's denial was erroneous, as the Commonwealth was not providing timely discovery as to the nine charges that were added to the original information. **See** Appellant's Brief, at 20. However, Minner concedes that "the arguments made in [his]

first issue are identical to those raised here[.]" *Id*.

As we found Minner's first issue to be unmeritorious, we see no basis to conclude differently on this occasion. Other than a temporal argument, Minner has not articulated a salient basis for a continuance that could cast doubt on the trial court's exercise of discretion. Simply put, Minner does not effectively explain what the granting of additional time prior to his trial would have allowed him to do. He has not pointed to any unknown piece of evidence that was contained within the amendment nor has he taken issue with the introduction of someone he could claim to be a surprise witness.

Moreover, other than cursorily stating that the crime of conspiracy involves different elements when compared to his other charged crimes, Minner does not reasonably distinguish between the facts used in support of his initial Information and those supporting the amended information. Finally, Minner does not contest any element of the information gleaned from the extraction of his cell phone, which was possessed and utilized by him throughout the commission of his crimes.

As we find none of Minner's issues to be due any relief, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2020